IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EXPRESS MOBILE, INC.,                    )
                                         )
                Plaintiff,               )
                                         )
        v.                               )    C.A. No. 18-1173 (RGA)
                                         )
DREAMHOST, LLC,                          )
                                         )
                Defendants.              )

## DEFENDANT DREAMHOST, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
OF COUNSEL:                          Wilmington, DE 19899
                                     (302) 658-9200
Joel D. Voelzke                      kjacobs@mnat.com
INTELLECTUAL PROPERTY LAW OFFICES    jlyons@mnat.com
 OF JOEL VOELZKE, APC
24772 W. Saddle Peak Road                *Attorneys for Defendant DreamHost, LLC*
Malibu, CA  92065-3042
(310) 317-4466

December 17, 2018

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.   SUMMARY OF THE ARGUMENT ................................................................................1

III.  STATEMENT OF FACTS ..............................................................................................3

IV.  LEGAL STANDARD....................................................................................................4

V.   ARGUMENT .................................................................................................................5

     A.     The Claims of the '397 and '168 Patents Are Directed To Patent Ineligible
          Subject Matter ....................................................................................................5

            1.     Alice *Step One:  The '397 and '168 Patents are Directed to the
                    Abstract Idea of Creating and Displaying Web Pages Based Upon
                    Information From a User* ...........................................................................6

            2.     Alice *Step Two:  The '397 and '168 Patents Do Not Contain an
                    Inventive Concept* ........................................................................................9

            3.     *Claim 1 of the '397 Patent is Representative of All of the Asserted
                    Claims of the '397 and '168 Patents* ..........................................................11

     B.     The Willful Infringement Claims Should Be Dismissed to the Extent They
          Allege Willful Infringement Prior to the Time DreamHost Allegedly
          Received Notice of the Patents-in-Suit .................................................................15

     C.     Claims of Infringement of the '397 and '168 Patents Prior to the Filing of
          the Original Complaint and of the '287 and '044 Patents Prior to the Filing
          of the FAC Should Be Dismissed For Failure to Plead Compliance with
          the Marking Statute ..............................................................................................16

VI.  CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016)....................................................5, 7, 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208, 134 S. Ct. 2347 (2014)....................................5, 8, 9, 11

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,*
    876 F.3d 1350 (Fed. Cir. 2017)......................................................17, 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................4

*Automated Tracking Sols., LLC v. Coca-Cola Co.,*
    723 F. App'x 989 (Fed. Cir. 2018) .....................................................11

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016).........................................................10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................4

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018)....................................................4, 6, 11

*Dunlap v. Schofield,*
    152 U.S. 244 (1894)...........................................................................17

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)....................................................12, 13

*Express Mobile, Inc. v. Domani Studios LLC,*
    C.A. No. 18-102-RGA (D. Del. Aug. 24, 2018)................................18

*Express Mobile, Inc. v. eGrove Sys. Corp.,*
    C.A. No. 17-703-RGA (D. Del. Aug. 22, 2018)........................4, 10, 17

*Express Mobile, Inc. v. ePages Inc.,*
    C.A. No. 17-707-VAC-SRF (D. Del. Oct. 11, 2017) ........................18

*Express Mobile, Inc. v. Filoblu USA Corp.,*
    C.A. No. 18-155-RGA (D. Del. June 21, 2018) ................................18

*Express Mobile, Inc. v. Forix LLC*,
    C.A. No. 17-127-JRG (E.D. Tex. May 17, 2017)...................................................18

*Express Mobile, Inc. v. Icreon Tech, Inc.*,
    C.A. No. 17-704-VAC-SRF (D. Del. Oct. 26, 2017) ............................................18

*Express Mobile, Inc. v. Manifest LLC*,
    C.A. No. 18-103-RGA (D. Del. July 2, 2018) ......................................................18

*Express Mobile, Inc. v. Martin Retail Grp., LLC*,
    C.A. No. 18-1178-RGA (D. Del. Sept. 24, 2018)..................................................18

*Express Mobile, Inc. v. Publicis Hawkeye, Inc.*,
    C.A. No. 18-1182-RGA (D. Del. Sept. 24, 2018)..................................................18

*Express Mobile, Inc. v. Rockfish Interactive LLC*,
    C.A. No. 18-105-RGA (D. Del. Aug. 14, 2018).....................................................18

*Express Mobile, Inc. v. SG Hosting Inc.*,
    C.A. No. 18-104-RGA (D. Del. Aug. 27, 2018).....................................................18

*Finnavations LLC v. Payoneer, Inc.*,
    C.A. No. 18-444-RGA, 2018 WL 6168618 (D. Del. Nov. 26, 2018).......................4

*Groove Dig., Inc. v. King.com, Ltd.*,
    C.A. No. 18-836-RGA, 2018 WL 6168615 (D. Del. Nov. 26, 2018)...........2, 15, 16

*Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*,
    C.A. No. 17-1086-LPS, 2018 WL 5669168 (D. Del. Nov. 1, 2018) ..................2, 17

*IMX, Inc. v. Lendingtree, LLC*,
    C.A. No. 03-1067-SLR, 2005 WL 3465555 (D. Del. Dec. 14, 2005) ....................19

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ...............................................................................18

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)...........................................................................9, 14

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)............................................................................1, 8

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    711 F. App'x 1012 (Fed. Cir. 2017) .......................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..............................................................2, 5, 9, 11

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ........................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ........................................................................7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) .....................................................................5, 6

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017) ......................................................................15

*Northbrook Dig. Corp. v. Browster, Inc.*,
    C.A. No. 06-4206, 2008 WL 4104695 (D. Minn. Aug. 26, 2008) ........................19

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ........................................................................9

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .....................................................................4, 7

*Soverain Software LLC v. Amazon.com, Inc.*,
    383 F. Supp. 2d 904 (E.D. Tex. 2005) .............................................................19

*TriPlay, Inc. v. WhatsApp Inc.*,
    C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027 (D. Del. Mar. 27, 2018) ..............4

*Two-Way Media, Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ......................................................................10

*Välinge Innovation AB v. Halstead New England Corp.*,
    C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) .............15

**Other Authorities**

*News*, Express Mobile, Inc., http://www.xpressmo.com/in-the-news.html (last
    visited Dec. 17, 2018) ...................................................................................18

*Technology*, Express Mobile, Inc., http://www.xpressmo.com/technology.html
    (last visited Nov. 30, 2018) ...........................................................................17

**Rules and Statutes**

35 U.S.C. § 101 ..................................................................................... *passim*

35 U.S.C. § 287(a) ...........................................................................1, 3, 16

Federal Rule of Civil Procedure 12(b)(6) ...............................................1, 4

## I.  NATURE AND STAGE OF THE PROCEEDINGS

On August 4, 2018, Plaintiff Express Mobile, Inc. ("Express Mobile") filed this action against Defendant DreamHost, LLC ("DreamHost") alleging infringement of U.S. Patent Nos. 6,546,397 ("the '397 patent") and 7,594,168 ("the '168 patent").  (D.I. 1).  On October 19, 2018, Express Mobile filed a First Amended Complaint ("FAC") in which it asserted two additional patents, U.S. Patent Nos. 9,471,287 ("the '287 patent") and 9,928,044 ("the '044 patent") (together with the '397 and '168 patents, the "Asserted Patents" or the "Patents-in-Suit").  (D.I. 10).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), DreamHost moves to dismiss:  (1) Counts I and II in the FAC on the grounds that the asserted claims of '397 and '168 patents are not directed to patent-eligible subject matter and are thus invalid under 35 U.S.C. § 101 ("Section 101"); (2) the willful infringement claims (i) in Counts III and IV for failing to plead any pre-suit knowledge of the '287 and '044 patents and (ii) in Counts I and II for failing to plead any pre-suit knowledge of the '397 and '168 patents prior to the filing of the original Complaint; and (3) any claims for pre-suit damages for failure to plead compliance with the marking requirement of 35 U.S.C. § 287(a).

## II.  SUMMARY OF THE ARGUMENT

The claims of the '397 and '168 patents are invalid under Section 101 because they are directed to the abstract idea of creating and displaying webpages based upon information from a user.  *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (finding claims relating to customizing information on a website based on "information known about the user and [] navigation data" ineligible under Section 101). Additionally, the claims of the '397 and '168 patents do not transform the abstract idea into something more by introducing an "inventive concept" because they merely recite the use of

conventional and generic computing technologies on which to perform the abstract idea. Such generic computer implementation does not render the claims patent eligible. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (finding claims did not contain an inventive concept because they claimed the use of "generic computers to perform generic computer functions").

The willful infringement claims contained in Counts III and IV (relating to the '287 and '044 patents, respectively) should be dismissed because Express Mobile does not allege facts evincing DreamHost's purported knowledge of those patents prior to the filing of the FAC. Express Mobile's conclusory statement that DreamHost was aware of the '287 and '044 patents "at least as early as the filing of the original Complaint in this action[,]" (D.I. 10 at ¶¶ 143, 213), is implausible, as neither of those patents were even mentioned in the original Complaint. And to the extent that DreamHost was made aware of the '287 and '044 patents via the FAC, the willfulness claims still fail because Express Mobile was required to "'allege facts in [the FAC] plausibly demonstrating that [DreamHost] had committed subjective willful infringement *as of the date of the filing* of the willful infringement claim.'" *Groove Dig., Inc. v. King.com, Ltd.*, C.A. No. 18-836-RGA, 2018 WL 6168615, at *3 (D. Del. Nov. 26, 2018) (emphasis added) (citation omitted). Likewise, Express Mobile cannot assert pre-suit willful infringement of the '397 and '168 patents because it does not allege that DreamHost had knowledge of those patents prior to the filing of the original Complaint, as Express Mobile itself acknowledges. (D.I. 10 at ¶¶ 54-55, 72-73, 143-44, 210-11).

The infringement claims regarding the '397 and '168 patents—prior to the filing of the original Complaint—and the '287 and '044 patents—prior to the filing of the FAC—should be dismissed for failure to plead compliance with the marking statute. *See Horatio Wash. Depot*

*Techs. LLC v. TOLMAR, Inc.*, C.A. No. 17-1086-LPS, 2018 WL 5669168, at *3 (D. Del. Nov. 1, 2018) (citation omitted) ("It is plaintiff's burden to both plead and prove compliance with the marking statute."). There are no factual allegations of any kind in either the original Complaint or the FAC that reference marking, and therefore Express Mobile's pre-complaint infringement claims should be dismissed. *See* 35 U.S.C. § 287(a).

## III. STATEMENT OF FACTS

In the FAC, Express Mobile alleges infringement of "at least claims 1-4, 8-11[,] and 37 of the '397 patent" (D.I. 10 at ¶ 19), "claim 1 of the '168 patent" (*id.* at ¶ 66), "claims 1-5, 11, 12, 15-19, 25[,] and 26 of the '287 patent" (*id.* at ¶ 83), and "claims 1-5, 11, 12, 15-19, 25[,] and 26 of the '044 patent" (*id.* at ¶ 155). Express Mobile alleges that "DreamHost sells and offers to sell products and services throughout the United States, . . . and introduces products and services into the stream of commerce . . . that incorporate infringing technology[.]" (*Id.* at ¶ 4).

More specifically, Express Mobile alleges that DreamHost infringes the asserted claims of the '397 and '168 patent via its use of "a browser-based website and/or web page authoring tool in which the user-selected settings representing website elements are stored in a database, and in which said stored information is retrieved to generate said website[,]" which "include[s] but [is] not limited to the website building tools used and/or provided by [DreamHost], such as, for example, Word[P]ress and/or Joomla." (*Id.* at ¶¶ 19 (WordPress and Joomla), 66 (WordPress only)). For the claims of the '287 and '044 patents, Express Mobile alleges that DreamHost infringes via its use of "a system and method which includes a registry and an authoring tool or Player configured to define a User Interface . . . object for display on the device, where the [User Interface] object corresponds to a web component[,]" which "include[s] but [is] not limited [sic] website building tools used and and/or provided by [DreamHost], such as, for example," WordPress. (*Id.* at ¶¶ 83, 155).

In a related case, this Court construed several terms in the '397 and '168 patents.  Oral

Order, *Express Mobile, Inc. v. eGrove Sys. Corp.*, C.A. No. 17-703-RGA (D. Del. Aug. 22,

2018).  Those terms were construed as follows:

- "Virtual machine is construed as abstract machine emulated in software." *Id.*

- "At least one run time file is construed as one or more files, including a run time engine, that are downloaded or created when a browser is pointed to a web page or website." *Id.*

- "Run time engine is construed as file that is executed at runtime that facilitates the retrieval of information from the database and generates commands to display a web page or website." *Id.*

## IV.    LEGAL STANDARD

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where a complaint does not

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  The complaint must provide sufficient factual allegations to allow the

Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 506 U.S. at 678.  The Court is not required "to accept as true 'bald assertions,' . . .

'unsupported conclusions and unwarranted inferences,' . . . or allegations that are 'self-evidently

false[.]'"  *TriPlay, Inc. v. WhatsApp Inc.*, C.A. No. 13-1703-LPS-CJB, 2018 WL 1479027, at *3

(D. Del. Mar. 27, 2018) (citing Third Circuit precedent).

The Federal Circuit has repeatedly held that Section 101 disputes may be decided on

motions to dismiss.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Patent

eligibility has in many cases been resolved on motions to dismiss. . . . Nothing in this decision

should be viewed as casting doubt on the propriety of those cases."); *see also SAP Am., Inc. v.

InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (noting that eligibility under Section 101

"may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *Finnavations*

*LLC v. Payoneer, Inc.*, C.A. No. 18-444-RGA, 2018 WL 6168618, at *2 (D. Del. Nov. 26, 2018) (explaining that the Section 101 "inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter").

## V.     ARGUMENT

### A.     The Claims of the '397 and '168 Patents Are Directed To Patent Ineligible Subject Matter

The claims of the '397 and '168 patents are directed to patent ineligible subject matter under Section 101.  The Supreme Court set out a two-part framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2355 (2014).  At step one, the Court asks whether the claims are directed to an abstract idea.  *Id.*  An abstract idea "does not become nonabstract by limiting [it] to a . . . technological environment," such as a computer or network system.  *Symantec*, 838 F.3d at 1319.  Rather, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (explaining that the first step "calls upon [the Court] to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

At step two, the Court is to "consider whether the claims contain an 'inventive concept' sufficient to 'transform the nature of the claim into a patent-eligible application.'"  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2355)).  In looking for an inventive concept, the Court is to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain 'an element or

combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (citation omitted). To satisfy the second step of *Alice*, the patent claims must "'involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citations and internal quotation marks omitted).

        1.    Alice *Step One: The '397 and '168 Patents are Directed to the Abstract Idea of Creating and Displaying Web Pages Based Upon Information From a User*

The asserted claims of the '397 and '168 patents are drawn to the abstract idea of creating and displaying web pages based upon information from a user. Claim 1 of the '397 patent, (which is representative of all of the asserted claims for the reasons given below) recites:

> 1. A method to allow users to *produce Internet websites on and for computers* having a *browser* and a *virtual machine* capable of generating displays, said method comprising:
>
> (a) presenting a *viewable menu having a user selectable panel of settings* describing elements on a website, said panel of setting being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine;
>
> (b) *generating a display* in accordance with one or more user selected settings substantially contemporaneously with the selection thereof;
>
> (c) *storing information representative of said one or more user selected settings in a database*;
>
> (d) *generating a website* at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and
>
> (e) *building one or more web pages* to generate said website from *at least a portion of said database* and at least one *run time file*, where said at least one run time file utilizes information stored in said database to generate *virtual machine commands* for the

display of at least a portion of said one or more web pages.

'397 patent, cl. 1 (emphasis added).

The focus of the claim is the abstract idea of creating and displaying web pages based upon information from a user. *See SAP Am., Inc.*, 898 F.3d at 1167 (discussing the "focus of the claims" at step one). Each step is part and parcel of creating and displaying a web page based on user information. Limitation (a) merely requires a menu of available settings that the user can select from to build his or her web page. Limitation (b) adds that a display is generated based on the settings the user selects and that the display is generated contemporaneously with the user's selections. However, there is nothing in the claim that discusses "how" such a display is to be generated, nor are there instructions on how to generate that display "substantially contemporaneously" with the user's selection. *See, e.g.*, *DIRECTV*, 838 F.3d at 1258 (explaining that there was "nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. . . . Rather, the claim is drawn to the idea itself") (emphasis in original).

The other limitations in claim 1 further demonstrate the abstract nature of the claim. Limitation (c) requires that settings are stored in a database. Limitation (d) requires that a website is generated "at least in part" via the retrieval of those setting stored on the database, and limitation (e) then requires the generating of a web page also based on "at least a portion" of the database. As is evidenced by the language of the limitations, the claim is written in purely functional language and merely claims the result of building a web page based on user input. Broad, functional language is the hallmark of a claim directed to an abstract idea. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018) (explaining that "recent abstract idea exception decisions likewise have stressed that a claimed invention must

embody a concrete solution to a problem having "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it" and finding for the claim at issue that its purported "improvement in computing devices" was "recited only at the broadest, functional level, without explaining how that is accomplished, let alone providing a technical means for performing that function") (internal citation omitted); *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d at 1269 (finding that claims were recited at such a high level of generality that they did "no more than describe a desired function or outcome, without providing any limiting detail that confine[d] the claim to a particular solution to an identified problem").

Claim 1 of the '397 patent is akin to the claims found ineligible in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015). The Federal Circuit found the claims there ineligible because they were directed to creating and displaying a web page based on information about a user. *Id.* at 1369-70. As described by the *Capital One* Court, "[t]he '382 patent, entitled 'Advanced Internet Interface Providing User Display Access of Customized Webpages,' claim[ed] methods and systems for providing customized web page content to the user as a function of user-specific information and the user's navigation history." *Id.* at 1365. It further explained that claim 1 of the '382 patent failed *Alice* step one because tailoring content (including a web page) based upon information provided about a user was a "fundamental practice" that was "long prevalent[,]" such as tailoring newspaper advertising based on a user's location. *Id.* Similarly, claim 1 of the '397 patent is directed to nothing more than creating and customizing the look of a web page based on user-provided information. Altering the look of something based on a user's indicated preferences is exactly the long prevalent and fundamental practice that is ineligible under Section 101. *See, e.g.*, *Alice*, 134 S. Ct. at 2356. Therefore, claim 1 of the '397 patent is directed to an abstract idea.

2. Alice *Step Two: The '397 and '168 Patents Do Not Contain an Inventive Concept*

The second *Alice* step considers the claim elements to determine whether they add an "inventive concept" or something "significantly more" to the abstract idea sufficient to be deemed patent eligible. *See Alice*, 134 S. Ct. at 2357; *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims."). Here, there is no inventive concept in any of the asserted claims of the '397 and '168 patents that renders them patent eligible, whether viewing the claims as a whole or looking to the individual limitations. There is nothing in claim 1 of the '397 patent that goes beyond the abstract idea of creating and displaying web pages based upon information from a user. Rather, the claim merely implements the abstract idea on generic computer components that are performing their ordinary functions, which is insufficient as an "inventive concept." *See, e.g.*, *Symantec*, 838 F.3d at 1318 (finding the asserted claims lacked an inventive concept because each limitation did "'no more than require a generic computer to perform generic computer functions'") (citation omitted); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) (explaining that "generic computer components [are] insufficient to add an inventive concept to an otherwise abstract idea").

Claim 1 requires that "websites" are produced "on and for computers" that have a "browser," that a "display" is generated, and that information is stored on a "database." '397 patent, cl. 1. None of those elements is anything other than a generic computer and/or computer component. And while elements such as "virtual machine," "run time file," and "run time engine" are not as obviously generic on their face, this Court's constructions of those terms in a related action shows that they are, in fact, just generic computer components. This Court construed "virtual machine" to mean an "abstract machine emulated in software." Order,

9

*Express Mobile, Inc. v. eGrove Sys. Corp.*, C.A. No. 17-703-RGA (D. Del. Aug. 22, 2018).  The '397 patent does not purport to claim that it invented virtual machines, and in fact the specification references examples of virtual machines.  '397 patent, col. 35:34-38.  The same is true for "run time file" and "run time engine," which were construed, respectively, "as one or more files, including a run time engine, that are downloaded or created when a browser is pointed to a web page or website" and "as [a] file that is executed at runtime that facilitates the retrieval of information from the database and generates commands to display a web page or website."  Order, *Express Mobile, Inc. v. eGrove Sys. Corp.*, C.A. No. 17-703-RGA (D. Del. Aug. 22, 2018).  The '397 patent does not purport to have invented run time files or engines, and it includes references to already existing versions of those types of files.  *See* '397 patent, col. 5:53-57 ("A run time generation process is then invoked to create the necessary run time files at **8** (including HTML shell, CAB/JAR files[,] and a customized runtime engine)[.]").

Additionally, there is nothing inventive about the "ordered combination" of the claim limitations.  *See Two-Way Media, Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017); *see also id.* at 1341 ("Nor do we see any inventive concept in the ordered combination of these steps.  The steps are organized in a completely conventional way—data are first processed, sent, and once sent, information about the transmission is recorded."); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").  Here, the steps of the claim are conventional because each step logically proceeds from the step before it.  For example, a user must choose settings for his or her website before a display can be generated based on those setting choices.  '397 patent, col. 65:44-54.  Likewise, a user must first make his or her setting choices before those selections can be stored,

and those settings cannot be retrieved from the database until they are first stored on that database, *id.*, col. 65:59-63. Accordingly, there is no inventive concept in claim 1 of the '397 patent and thus the claim is ineligible under Section 101.

3. *Claim 1 of the '397 Patent is Representative of All of the Asserted Claims of the '397 and '168 Patents*

It is appropriate here for the Court to treat claim 1 of the '397 patent as representative of the remaining asserted claims of the '397 patent and the asserted claim of the '168 patent (which is a continuation of the '397 patent) because those claims fail to add anything of significance that would distinguish them for the purposes of Section 101. *See Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]"); *see also Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 991 (Fed. Cir. 2018) ("In a § 101 analysis, courts may evaluate representative claims."); *Symantec*, 838 F.3d at 1316 n.9 ("Addressing each of the asserted claims is unnecessary when 'all the claims are substantially similar and linked to the same abstract idea.'") (citation omitted).

There are three asserted independent claims in the '397 patent—claims 1, 2, and 37. Claim 2 is substantially identical to claim 1 except that it is written as an apparatus claim instead of a method claim. '397 patent, cl. 2. This makes no difference here for the purposes of Section 101. *See, e.g.*, *Alice*, 134 S. Ct. at 2359-60 (finding a patent's system and media claims invalid after analyzing the patent's method claim). Claim 37 is also an apparatus claim similar to claim 2, except that claim 37 requires a "plurality" of settings from the user (instead of claim 2's "one or more" settings), and the database is "internal" in claim 37 instead of unspecified as in claim 2.

*Id.*, cl. 37.  Neither of those minor differences alters what the claim is directed to nor do they constitute any "inventive concept."

Express Mobile also asserts infringement of six claims that depend from claim 2—claims 3-4 and 8-11—however none of those claims add anything of significance to a Section 101 analysis.  Claim 3 requires that the database found in claim 2 be a "multi-dimensional array structured database."  '397 patent, col. 66:24-26.  This is just limiting the database to a type of known database that can store various multimedia objects, *id.*, col. 2:5-9, as compared to other known types of databases utilizing one- or two-dimensional arrays, *id.*, col. 22:30-34.  There is nothing inventive about using one type of generic database over a different generic database.  Claim 4 limits the type of data that is stored on the database to "Boolean data, numeric data, string data or multi-dimensional arrays of various multimedia objects."  *Id.*, cl. 4.  However, limiting the collection and storing of data based on its content or source is an abstract idea and does not provide an inventive concept.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353, 1355-56 (Fed. Cir. 2016) (explaining that "collecting information, including when limited to particular content . . . [is] within the realm of abstract ideas" and that "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes" under *Alice* step two; and further noting that the "claims in th[e] case d[id] not even require a new source or type of information").  The patent admits, however, that the delineated types of data in claim 4 are not new forms of data.  *See* '397 patent, col. 22:30-34.

Claims 8-11 are likewise merely limitations based on what type of information is being utilized by the apparatus of claim 2.  Claim 8 merely requires that one or more types of "elements" appear on the website, those elements being described as "a transition or an

animation of at least one of said elements on a web page." *Id.*, cl. 8. Likewise, claim 9 requires that an element on the web page include a "button" or an "image," and also that a user is able to select an "element style" that is stored on the database. *Id.*, cl. 9. Claims 10 and 11 depend from claim 9 and further require that the "elements are described by multiple object states[,]" *id.*, cl. 10, or that the "elements are described by a transformation or a timelines [sic] of said selected styles[,]" *id.*, cl. 11. What is clear is that these additional limitations merely refine what types of information can be utilized by the apparatus of claim 2, and, again, limiting the types of information to be used is abstract and provides no inventive concept. *See Elec. Power Grp., LLC*, 830 F.3d at 1353, 1355-56.

The sole asserted claim of the '168 patent, claim 1, is adequately represented by claim 1 of the '397 patent. Claim 1 of the '168 patent recites:

> 1. A system for assembling a web site comprising:
>
> a *server* comprising a build engine configured to:
>
> accept *user input* to create a web site, the web site comprising a plurality of web pages, each web page comprising a plurality of objects,
>
> accept user input to *associate a style* with objects of the plurality of web pages, wherein each web page comprises *at least one button object or at least one image object*, and wherein the at least one button object or at least one image object is associated with a style that includes values defining *transformations and time lines* for the at least one button object or at least one image object; and wherein each web page is defined entirely by each of the plurality of objects comprising that web page and the style associated with the object,
>
> produce a *database* with a multidimensional array comprising the objects that comprise the web site including data defining, for each object, the object style, an object number, and an indication of the web page that each object is part of, and
>
> provide the database to a server accessible to web [sic] browser;

> wherein the database is produced such that a web browser with access to a runtime engine is configured to generate the web-site from the objects and style data extracted from the provided database.

'168 patent, cl. 1 (emphasis added). The claim is directed to the same abstract idea as claim 1 of the '397 patent—creating and displaying web pages based upon information from a user.

Like claim 1 of the '397 patent, claim 1 of the '168 patent requires a user to input information that is saved to a database and is used to generate a web page. Although there are differences between the claims, none of those differences alter the Section 101 analysis. Many of the additional limitations found in claim 1 of the '168 patent are the same as those found in the asserted dependent claims of the '397 patent. For example, claim 1 of the '168 patent requires that each web page feature "at least one button object or at least one image object" and that at least one of the buttons or images be "associated with a style"; these mirror the limitations of claim 9 of the '397 patent. Claim 1 of the '168 patent also requires that the "style . . . includes values defining transformations and time lines for the at least one button object or at least one image object[,]" which is substantially similar to the requirements of claim 11 of the '397 patent. Last, claim 1 of the '168 patent requires the production of "a database with a multidimensional array[,]" just like claim 3 of the '397 patent.

Aside from the overlapping limitations identified above, the only other component of claim 1 of the '168 patent that is not included in the asserted claims of the '397 patent is that the system includes a "server." '168 patent, cl. 1. However, the Federal Circuit has explained on multiple occasions that a server is a generic computer. *See, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 614 (explaining that a server identified in the claims "fail[ed] to add an inventive concept because it is simply a generic computer"); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1018-19 (Fed. Cir. 2017) (finding that the patent at issue

did not suggest that a required "server" was non-generic and that generic computer implementation of an abstract idea does not move a claim into Section 101 eligibility territory"). There is nothing in the '168 patent that suggests that the server in claim 1 is anything other than a generic server.

For the foregoing reasons, the non-representative claims are ineligible for the same reasons as claim 1 of the '397 patent.

**B.      The Willful Infringement Claims Should Be Dismissed to the Extent They Allege Willful Infringement Prior to the Time DreamHost Allegedly Received Notice of the Patents-in-Suit**

The FAC fails to sufficiently state any claim for willful infringement of the '287 and '044 patents. "'[T]o state a claim of willful infringement, the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement *as of the date of the filing* of the willful infringement claim.'"  *Groove Dig., Inc.*, 2018 WL 6168615, at *3 (emphasis added) (quoting *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *10-12 (D. Del. May 29, 2018)); *accord Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017) (holding that the trial court erred in precluding evidence of willfulness because, *inter alia*, "it erred in determining the filing date of the relevant suit").

Express Mobile alleges in its FAC that DreamHost "was made aware of the '287 [and '044] patent[s] and its infringement thereof at least as early as the filing of the original Complaint in this action."  (D.I. 10 at ¶¶ 143, 213).  Therefore, "[s]ince the date of the filing of the original Complaint[,]" DreamHost's "infringement of the '287 [and '044] patent[s] has been willful."  (*Id.* at ¶¶ 144, 214).  These willfulness allegations are implausible because the '287 and '044 patents were not included in, or even referenced by, Express Mobile in its original Complaint.  (*See generally* D.I. 1).  Nor are there any allegations elsewhere in the FAC that

purport to demonstrate any prior knowledge of the '287 or '044 patents prior to the filing of the FAC. And to the extent that DreamHost was made aware of the '287 and '044 patents when it received a copy of the FAC, such knowledge is insufficient to save Express Mobile's willful infringement claims. In order to sufficiently state a claim of willful infringement, it must be alleged, *inter alia*, that an accused infringer engaged in "willful conduct prior to the filing of the claim." *Groove Dig., Inc.*, 2018 WL 6168615, at *3. There are no plausible allegations that DreamHost had knowledge of those patents before it was served with the FAC (which is presumably after the FAC was filed). Therefore, the willful infringement claims in Counts III and IV should be dismissed.

Additionally, any claims of willful infringement of the '397 and '168 patents should be limited to the time after DreamHost allegedly received notice of those patents in the original Complaint, as Express Mobile itself acknowledges. (*See, e.g.,* D.I. 10 at ¶¶ 55, 74 ("Since the date of the filing of this Complaint, Defendant's infringement of the '397 [and '168] patent[s] has been willful."); *see also id.* at ¶¶ 54, 73 ("Defendant was made aware of the '397 [and '168] patent[s] and its infringement thereof at least as early as the filing of this Complaint.")).

C.      **Claims of Infringement of the '397 and '168 Patents Prior to the Filing of the Original Complaint and of the '287 and '044 Patents Prior to the Filing of the FAC Should Be Dismissed For Failure to Plead Compliance with the Marking Statute**

Express Mobile's infringement claims regarding the '397 and '168 patents—prior to the filing of the original Complaint—and the '287 and '044 patents—prior to the filing of the FAC—should be dismissed because Express Mobile has not pleaded that it complied with 35 U.S.C. § 287(a) ( "the marking statute"). Under Section 287(a):

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with

the number of the patent . . . In the event of a failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

Thus, under the marking statute, "notice that sales of a product may constitute patent infringement may be given to the alleged infringer in one of two ways: (1) via constructive notice, by properly marking the patentee's own product . . .; or (2) via actual notice (such as by filing an infringement action against the [alleged] infringer.)" *Horatio Wash. Depot Techs. LLC*, 2018 WL 5669168, at *2. It is the plaintiff's burden to both plead and prove compliance with the marking statute. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).

Express Mobile alleges that DreamHost infringes the Asserted Patents through its sale and offers to sell "products and services" and its introduction of "products and services into the stream of commerce . . . that incorporate infringing technology[.]" (D.I. 10 at ¶ 4). At the same time, Express Mobile alleges that it is a practicing entity "offering solutions related to website and web app development." Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings at 3, *Express Mobile, Inc.*, C.A. No. 17-cv-128 (E.D. Tex. Apr. 12, 2017) (incorporated by reference into the FAC by ¶ 16); *see also Technology*, Express Mobile, Inc., http://www.xpressmo.com/technology.html (last visited Nov. 30, 2018) ("At Express Mobile, we practice our own patents in our various platforms, frameworks[,] and solutions."). Whether or not Express Mobile *actually* sells products covered by the Asserted Patents, and whether those products are marked, is a matter "peculiarly within [Express Mobile's] own knowledge[,]" *see Dunlap v. Schofield*, 152 U.S. 244, 248 (1894), and is exactly why it is a plaintiff's burden to

plead marking, *see Arctic Cat Inc.*, 876 F.3d at 1366 (explaining that "the marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented").

To comply with the marking statute, not only must a patentee mark its own products, but "[a] patentee's licensees must also comply with [Section] 287[a], because the statute extends to 'persons making or selling any patented article for or under [the patentee].'" *Id.* (last alteration in original). Yet Express Mobile has failed to allege here that any of its presumptive licensees have marked their products with the asserted patents.[1] Express Mobile also explains on its website that its patent portfolio (including the Asserted Patents) are available for licensing.[2] *See In the News*, Express Mobile, Inc., http://www.xpressmo.com/in-the-news.html (last visited Dec. 17, 2018) (noting that Express Mobile has "recently announced that its portfolio of patents is

---

[1]    The Court may take judicial notice of the many lawsuits Express Mobile has filed asserting the same patents here that have resulted in stipulated dismissals. *See, e.g.*, Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Martin Retail Grp., LLC*, C.A. No. 18-1178-RGA (D. Del. Sept. 24, 2018); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Publicis Hawkeye, Inc.*, C.A. No. 18-1182-RGA (D. Del. Sept. 24, 2018); Notice of Dismissal With Prejudice, *Express Mobile, Inc. v. SG Hosting Inc.*, C.A. No. 18-104-RGA (D. Del. Aug. 27, 2018); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Domani Studios LLC*, C.A. No. 18-102-RGA (D. Del. Aug. 24, 2018); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Rockfish Interactive LLC*, C.A. No. 18-105-RGA (D. Del. Aug. 14, 2018); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Manifest LLC*, C.A. No. 18-103-RGA (D. Del. July 2, 2018); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Filoblu USA Corp.*, C.A. No. 18-155-RGA (D. Del. June 21, 2018); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. Icreon Tech, Inc.*, C.A. No. 17-704-VAC-SRF (D. Del. Oct. 26, 2017); Notice of Voluntary Dismissal With Prejudice, *Express Mobile, Inc. v. ePages Inc.*, C.A. No. 17-707-VAC-SRF (D. Del. Oct. 11, 2017); Order of Dismissal with Prejudice, *Express Mobile, Inc. v. Forix LLC*, C.A. No. 17-127-JRG (E.D. Tex. May 17, 2017) (ordering dismissal in response to a "Joint Motion to Dismiss With Prejudice"). Again, because these matters are peculiarly within Express Mobile's knowledge, Express Mobile was required to plead compliance with the marking statute.

[2]    Copies of the pages in question are attached as Exhibit A. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that "'a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'").

now available for licensing" and that "Express Mobile practices and licenses its foundation patents"). Yet Express Mobile does not allege it has marked its own products or websites or required its licensees to do so. *See IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR, 2005 WL 3465555, at *4 (D. Del. Dec. 14, 2005) (finding that plaintiff was required to mark its website with the asserted patent because "the commercial embodiment of the patented invention . . . [was] accessed and used through [plaintiff's] website[,]" even though the "website itself [was] not the patented invention"); *Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 909 (E.D. Tex. 2005) (finding that pre-suit damages were unavailable to plaintiff because it had failed to require its licensees to mark their websites and where such websites were the embodiment of the patent); *see also Northbrook Dig. Corp. v. Browster, Inc.*, C.A. No. 06-4206, 2008 WL 4104695, at *4 (D. Minn. Aug. 26, 2008) (finding that plaintiff failed to comply with the marking statute because its products and browser software embodying the patents-at-issue were available to download "from numerous websites" and "the websites that offer the software can easily contain the requisite marking information"). Because Express Mobile was required to plead compliance with the marking statute, its claims should be dismissed to the extent Express Mobile seeks any damages prior to the time DreamHost was provided actual notice of the alleged infringement.

## VI. CONCLUSION

For the foregoing reasons, the Court should (1) dismiss Counts I and II in the FAC for failure to claim patent eligible subject matter; (2) dismiss (i) the willful infringement claims in Counts III and IV and (ii) the pre-suit willful infringement claims in Counts I and II; and (3) dismiss the infringement claims of (i) the '397 and '168 patents prior to the filing of the original Complaint and (ii) the '287 and '044 patents prior to the filing of the FAC for failure to plead compliance with the marking requirement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs
Karen Jacobs (#2881)
Jeffrey J. Lyons (#6437)

OF COUNSEL:                              1201 North Market Street
                                         P.O. Box 1347
Joel D. Voelzke                          Wilmington, DE 19899
INTELLECTUAL PROPERTY LAW OFFICES        (302) 658-9200
 OF JOEL VOELZKE, APC                    kjacobs@mnat.com
24772 W. Saddle Peak Road                jlyons@mnat.com
Malibu, CA  92065-3042
(310) 317-4466                           *Attorneys for Defendant DreamHost, LLC*

December 17, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 17, 2018, upon the following in the manner indicated:

Timothy Devlin                                                      *VIA ELECTRONIC MAIL*
Robert Kiddie
DEVLIN LAW FIRM LLC
1306 N. Broom Street, 1st Floor
Wilmington, DE  19806
 *Attorneys for Plaintiff*


                                        */s/ Karen Jacobs*
                                        Karen Jacobs (#2881)